# McColligan, Appellant, *v.* Pennsylvania Railroad Company.

*Master and servant—Definitions—When the relation exists.*

A master is one who stands to another in such a relation that he not only controls the results of the work of that other but also may direct the manner in which such work shall be done.

A servant is one who is employed to render personal services to his employer otherwise than in the pursuit of an independent calling, and who in such service remains entirely under the control and direction of the latter.

The relation of master and servant exists where the employer has the right to select the employee, the power to remove and discharge him, and the right to direct both what work shall be done, and the way and manner in which it shall be done.

*Bailment—Master and servant—Railroad cab service.*

A railroad company owning cabs, by an agreement in writing, let them out to drivers in consideration of the payment of a fixed sum per day. The agreement provided that the driver was to assume all liability for damages to any person or property, that he should not use a horse longer than six and one-half hours without returning to the stable for exchange, that he should wear a uniform, abstain from the use of intoxicating liquors, present a neat and clean appearance, and conform to the prescribed rates and regulations. Upon failure to observe these conditions the company reserved the right to cancel the unexpired term of the lease. The regulations provided in detail the rates to be charged for various distances, limited

the area beyond which the driver could not go without permission, and restricted the driver from performing other kinds of work. It also appeared that the company employed a cab agent to supervise the service, to secure men for the work, make contracts with the drivers, and enforce the terms and conditions of the lease. *Held*, (1) that the contract between the railroad company and the driver was one of bailment, and not one creating the relation of master and servant; (2) that the railroad company was not liable for injuries sustained through the negligence of the driver.

Argued Jan. 9, 1906.   Appeal, No. 167, Jan. T., 1905, by plaintiff, from judgment of C. P. No. 2, Phila. Co., June T., 1903, No. 4,162, on verdict for defendant in case of Dominick McColligan v. Pennsylvania Railroad Company.   Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.   Affirmed.

Trespass to recover damages for personal injuries.   Before SULZBERGER, J.

The opinion of the Supreme Court states the case.

Defendant presented the following points :

1. That as the evidence fails to establish the relation of master and servant between the driver of the hansom and the defendant, the latter cannot be held responsible for the former's negligence and, consequently, the verdict should be for defendant.

2. That upon all the evidence the verdict should be for the defendant.   *Answer :* I affirm both points.

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* were (1, 2) answers to points, quoting them.

*Thomas James Meagher*, for appellant.—Where there is a question as to the existence or nonexistence of the relation of master and servant in a negligence case, the chief and ultimate test is the test of control.   If the person sought to be charged as master had the power of control over the person alleged to be the servant, liability arises : Yewens v. Noakes, L. R. 6 Q. B. Div. 530; Singer Mfg. Co. v. Rahn, 132 U. S. 518 (10 Sup. Ct. Repr. 175) ; Bailey v. Troy, etc., R. R. Co., 57 Vt. 252 ; Thomas v. Altoona, etc., Electric Ry. Co., 191 Pa. 361 ; Stork v. Philadelphia, 199 Pa. 462.

The master can compensate his servant in any way that he

sees fit.  He can give to him either a stipulated salary, a part of the profits or the whole profits on a specified sum being paid to him : Atlantic Transport Co. v. Coneys, 82 Fed. Repr. 177.

*Edwin J. Sellers,* of *Sellers & Rhoads,* for appellee, cited : Hershinger v. Penna. R. R. Co., 25 Pa. Superior Ct. 147 ; Connor v. Penna. R. R. Co., 24 Pa. Superior Ct. 241.

OPINION BY MR. JUSTICE ELKIN, March 5, 1906 :

The decisive question raised by this appeal is whether as between the defendant and the driver of the hansom the relation was one of master and servant or of bailor and bailee.  If the former, the master is liable for the negligence of the servant; if the latter, the negligence of the bailee cannot be imputed to the bailor.  The contract of letting is in writing, the printed rates and regulations are made part thereof, so that the determination of the relation is a question of law for the court and not of fact for the jury.

The lease under which defendant let the hansom to the driver provides that " for and in consideration of the sum of $4.50, and on the conditions stated below, hires to H. Priest, driver, hansom No. 65 with two horses, for thirteen hours from 9:30 A. M. of the date stamped on the back of this certificate."  The conditions stated therein are in substance that the driver shall assume all liability for damages to any person or property, and that he agrees not to use a horse longer than six and one-half hours without returning to the stable for exchange, to wear a uniform, to abstain from the use of intoxicating liquors and to present a neat and clean appearance, to conform to the prescribed rates and regulations, and upon failure to observe these conditions the company reserves the right to cancel the unexpired term of the lease.

There can be no doubt that upon its face this contract of letting establishes the relation of bailor and bailee.  The learned counsel for appellant, who has ably and exhaustively presented the question, concedes that if the case rested upon the contract alone, a bailment would result within the meaning of the law. It, however, is earnestly contended that this prima facie relation is changed by reason of the conditions, rules and regulations, made part of the contract, to which the driver was subjected.

These regulations provide in considerable detail the rates to be charged for various distances, different kinds of vehicles, and length of time used. Certain boundaries are prescribed beyond which the driver cannot go without permission, and he is not permitted to perform other kinds of work such as carrying baggage and doing errands, during the term of the lease. It is also argued that because defendant company employs a cab agent to supervise this service, to secure men for the work, make contracts with the drivers, and enforce the terms and conditions of the lease, such control is thereby exercised as to make the company liable as master.

We must first consider what is necessary to establish the relation of master and servant. This question has been considered by a large number of text-writers and frequently passed upon by the courts. All authorities agree upon the following definitions of master, servant and the relation existing between them :

"A master is one who stands to another in such a relation that he not only controls the results of the work of that other, but also may direct the manner in which such work shall be done." "A servant is one who is employed to render personal services to his employer otherwise than in the pursuit of an independent calling, and who in such service remains entirely under the control and direction of the latter." "The relation of master and servant exists where the employer has the right to select the employee, the power to remove and discharge him, and the right to direct both what work shall be done, and the way and manner in which it shall be done :" 20 Am. & Eng. Ency. of Law (2d ed.), p. 11, 12. In more concise form these definitions mean that the master directs the manner in which the work shall be done and controls the results of the work. The servant is under the entire control and always subject to the direction of the master. The relation exists when the master not only has the right to select his servant, but has the power to remove and discharge him, with or without cause, and to direct what shall be done and the manner of doing it.

In the case at bar the defendant company does not control the results of the work, has no right to the proceeds arising from the fares paid drivers by passengers, and hence the fundamental and essential principle necessary to create the relation

of master is lacking.   The driver did not remain under the absolute direction and control of the company, and thereby cannot be said to be a servant within the meaning of the definition. The right of the master to discharge and remove the servant is incident to the relation, but in this case the abstract right did not exist.   It is true the lease could be canceled for the unexpired term, but only when the conditions thereof, or some of them, had been violated.   The cancellation of the lease was a contractual right and did not arise because of the employment relations of the parties.   The driver under the contract had legal rights enforceable against the company and only limited by the conditions therein contained.   If the company undertook to cancel the lease, or remove the driver, for a reason not set out in the conditions of letting, it would be liable in damages for breach of the contract.   Then, again, as has been stated, the driver is entitled to all the proceeds derived from fares received from passengers who hire the cab.   The aggregate of these fares may be $5.00 or $25.00 a day, but the company has has no control over, or interest in, the results of the work in this most important respect.   All of these things are inconsistent with the relation of master and servant and indicate that of bailor and bailee.

We have then under the express terms of the contract a bailment, and this relation is supported by the inferences and results just stated.   As against this admittedly. prima facie relation of bailor and bailee we are asked to say that by reason of the conditions limiting the rates, fixing boundaries, prescribing kinds of uniforms, requiring cleanly and sober habits and other incidental matters, the relation is not what it appears to be on its face, but is something different.   The contention is not sound.   The conditions and regulations, incidents of the contract of letting, in some instances it is true are consistent with the relation of master and servant, but not inconsistent with that of bailor and bailee.   If the company in order to protect its property and give the traveling public modern conveniences and suitable accommodations, has deemed it advisable to embody in the contract of letting certain reasonable regulations, no legal or business reason can be properly assigned why the real relation of the parties should be changed thereby.   The contract itself is one of bailment.   The conditions are not nec-

essarily inconsistent with this relation, and no sufficient reason is suggested why a different construction should be adopted.

It is true the contention of appellant is sustained by the rule of the English cases under the metropolitan hackney carriage act: Powles v. Hider, 6 E. & B. 207; Fowler v. Lock, L. R. 7 Common Pleas, 272; Venables v. Smith, L. R. 2 Q. B. Div. 279; King v. London Improved Cab Co., L. R. 23 Q. B. Div. 281; Gates v. Bill, L. R. 2 K. B. (1902) 38. It is not difficult to distinguish the present case from the English cases either in principle or fact. The cab system of the city of London is regulated by act of parliament. The entire system is a public service function. It is extensive in its operation and covers a wide area within the corporate limits of the city. It is operated by a limited number of companies enjoying valuable and almost exclusive privileges. Even under these circumstances, when the question was first before the English courts in 1856, it was doubted whether the common-law relation of bailor and bailee should be changed to that of master and servant, even when indicated by act of parliament, and the decision was largely based on the ground that the companies owning the cabs enjoyed valuable privileges, held themselves out to the public as the owners and ought not to be permitted to deny their liability as masters on this account. That the English courts did not consider the decision as resting on a firm foundation is shown by the fact that when in 1902 the question was again before the courts for consideration in the case of Gates v. Bill, L. R. 2 K. B. (1902) 38, Lords Williams and Romer, delivering the opinion of the court said, in substance, that at common law there could be no doubt that the relation was that of bailor and bailee, and that if the question were a new one they would hesitate to draw from the provisions of the statute the inference that parliament meant to assume the existence of the relation of master and servant so as to charge the owner with liability. In the opinion of the court there was nothing in the act which established the relation of master and servant, but the decisions on the question having firmly established the principle they felt themselves bound to accept the rule as the settled law of the realm.

If the English courts doubt the soundness of the rule after almost half a century has passed since its announcement it

cannot be argued with much confidence that our courts should adopt it in the first instance under conditions entirely dissimilar. We have no act of assembly regulating this matter and hence following the reasoning of the English courts, independent of the act of parliament, the common-law relation of bailor and bailee exists. The cab service of the defendant company does not enjoy exclusive and special privileges. It is limited in extent. It does not perform public service functions generally, and has no rights and privileges conferred by legislative enactment. It does not belong to the class of companies organized under the hackney carriage acts of parliament. The rule of those cases is not applicable to the facts of the present case.

We are of opinion, therefore, that a proper construction of the written contract, including the conditions and regulations, under which the driver took the custody of and operated the hansom, shows that the relation established was that of bailor and bailee, and there can be no recovery in this case.

Judgment affirmed.