Cookson *v.* Knauff et al., Appellants.

402

Argued March 14, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*W. E. Shissler,* with him *Paul G. Smith,* for appellants.

*Paul L. Hutchison,* for appellee.

OPINION BY RHODES, J., July 19, 1945:

Claimant was a dairy farmer living in the Province of Ontario, Canada. Defendant was a resident of Pennsylvania, and a dealer in livestock. He resided and conducted his business in Greencastle, Franklin County, Pa. In June, 1941, defendant went to Canada and purchased cattle to be shipped to Greencastle. He there engaged claimant to accompany and look after the cattle

while in transit. Claimant had assisted in bringing cattle to this state from Canada for defendant on previous occasions. Defendant contracted with one Howard Crane of Waterford, Canada, to transport the cattle in three of his trucks from Canada to Greencastle; the drivers were to purchase the feed needed for the cattle while en route, and defendant was to reimburse the drivers for the cost thereof. Claimant had nothing to do with this arrangement, he had no interest in the trucks, and he was not the driver of any one of them. Under the oral agreement between claimant and defendant, claimant was in complete charge of the cattle while being transported, and his duties were to water, feed, and milk them and look after them generally. He determined when the trucks should stop and when the cattle should be watered, fed, milked, and rested. Claimant was to be paid $3 per day and certain expenses.

On June 16, 1941, the cattle were loaded into the trucks, and the trip from Forte Perry, Canada, to Greencastle began. The next day while claimant was riding in one of the trucks driven by an employee of Crane it collided with an automobile near Mansfield, Pa. As a result of the collision the cattle were thrown forward, and claimant's arm was caught between the steering wheel of the truck and the top of the cabin. The injury necessitated amputation of his left arm three inches above the elbow.

The referee awarded compensation under section 306 (c) of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as reenacted and amended, 77 PS §513, for a period of 215 weeks. The Workmen's Compensation Board affirmed the award, but increased the compensation due to an alleged miscalculation by the referee of claimant's total wages.

On appeal the court of common pleas affirmed the board and entered judgment in favor of claimant against

defendant and his insurance carrier. From this judgment, the latter have appealed.

The assignments of error raise three questions: (1) Was claimant an employee of defendant when he was injured on June 16, 1941; (2) was claimant injured in the regular course of defendant's business; (3) were claimant and defendant bound by provisions of article 3 of the Act of June 2, 1915, P. L. 736, as reenacted and amended by the Act of June 21, 1939, P. L. 520, 77 PS §411 et seq.

The facts are not in dispute, and whether claimant was an employee of defendant or an independent contractor is here a question of law. *Doyle v. Commonwealth*, 153 Pa. Superior Ct. 611, 613, 34 A. 2d 812; *Thomas v. Bache et al.*, 155 Pa. Superior Ct. 224, 232, 38 A. 2d 551, 351 Pa. 220, 237, 40 A. 2d 495.

Appellants contend that claimant, under the facts in the case, was an independent contractor. The referee, the board, and the court below were of one mind that he was an employee of defendant.

The vital test in determining whether a workman is a servant of the person who engages him for the work is whether he is subject to the latter's control or right of control not only with regard to the work to be done but also with regard to the manner of performance. *Venezia v. Philadelphia Electric Co.*, 317 Pa. 557, 559, 177 A. 25. In *McColligan v. Pennsylvania R. Co.*, 214 Pa. 229, 232, 63 A. 792, it was said that the master and servant relationship exists where the employer has the right to select the employee, the power to remove and discharge him, and the right to direct both what work shall be done and the way and manner in which it shall be done. Under sections 103 and 104 of the Workmen's Compensation Act of 1915, as reenacted and amended, 77 PS §§21, 22, the terms "employer" and "employe" are synonymous with "master" and "servant." *Harris et al. v. Seiavitch*, 336 Pa. 294, 9 A. 2d 375; *Sechrist v.*

*Kurtz Brothers et al.,* 147 Pa. Superior Ct. 214, 215, 24 A. 2d 128.

We are of opinion that the essential elements of employer-employee relationship were present, and that the legal effect of the agreed material basic facts was that the relation between claimant and defendant was that of employee and employer respectively.

An extended discussion of what appears to us to be the obvious is not required. Most of the essential elements of contractor-contractee relationship, which we pointed out in *Sechrist v. Kurtz Brothers et al.,* supra, 147 Pa. Superior Ct. 214, 219, 220, 24 A. 2d 128, are lacking in the present case. Apparently either claimant or defendant could have terminated the employment at any time without liability to the other. Claimant received only a daily wage, and derived no other profit from the undertaking either directly or indirectly. "While this fact is not conclusive, yet when a workman is employed at a daily wage, the inference that he is a servant and not an independent contractor, will in the vast majority of cases be in accordance with the fact": *Thomas v. Bache et al.,* supra, 351 Pa. 220, at page 230, 40 A. 2d 495. Claimant was just one of a number engaged in the transportation of defendant's cattle from Canada to Greencastle. His assigned services were those naturally and usually to be performed by an employee in the absence of his employer. The fact that he determined when the trucks should stop and when the cattle should be watered, fed, milked, and rested may have given him the status of a foreman acting on behalf of defendant, but it did not make him an independent contractor. He remained an employee under the supervision and control of defendant. This is true although defendant may have been interested only in having the cattle delivered to Greencastle in a safe condition. See *Thomas v. Bache et al.,* supra, 351 Pa. 220, 231, 40 A. 2d 495. If claimant had employed, paid, and had full power to control the others engaged

in the transportation of defendant's cattle there might be some merit in appellants' argument that he was an independent contractor. Such was not the situation, however, and claimant's engagement was much more consistent with the relationship of master and servant than with that of owner and independent contractor.

We agree with the board's finding "that claimant was injured in the regular course of defendant's business." Under section 104 of the Workmen's Compensation Act of 1915, as reenacted and amended, 77 PS §22, an employee is not excluded from compensation unless his employment is not only casual in character but also outside the regular course of the business of the employer. This question raised by the first assignment of error is not pressed by appellants. Defendant was a dealer in livestock, and claimant's employment was in the regular course of defendant's business and a part of the normal conduct of that business.

Appellants' second assignment of error relates to the third question—Were claimant and defendant bound by the provisions of article 3 of the Workmen's Compensation Act of 1915, as reenacted and amended, 77 PS §411 et seq. Appellants contend that the parties were not bound by this article of the act as the contract of hiring was made in Canada, and the parties did not expressly agree that the provisions of the Pennsylvania Workmen's Compensation Act were to form a part of the contract of hiring. In support of this contention appellants argue that article 3 of the act was intended to apply only to accidents to employees in Pennsylvania if the contract of hiring was made in Pennsylvania between a Pennsylvania employer and a resident or non-resident employee who performed all or the major portion of his services within this state. See Bock v. D. B. Frampton & Co. et al., 105 Pa. Superior Ct. 380, 382, 161 A. 762; Stewart v. Thomas Earle & Sons, Inc., et al., 150 Pa. Superior Ct. 591, 592, 29 A. 2d 239. The results of the application of such a construction are quite

obvious, and could to a great extent reduce the expressed scope and the intended benefits of the act. See *American Mutual Liability Ins. Co. v. McCaffrey et al.*, 37 F. 2d 870, 871 (certiorari denied 281 U. S. 751, 50 S. Ct. 354, 74 L. Ed. 1162); *Ocean Accident & Guarantee Corp. v. Industrial Commission et al.*, 32 Arizona 275, 257 P. 644, 647.

Appellants' position is in direct conflict with the generally accepted and practical application of the Pennsylvania statute. Article 1, §101, of the Workmen's Compensation Act of 1915, as reenacted and amended, 77 PS §1, provides that the act "shall apply to all accidents occurring within this Commonwealth, irrespective of the place where the contract of hiring was made, renewed, or extended ......" Article 3, §302(a) of the act, as reenacted and amended, 77 PS §461, provides that: "In every contract of hiring made after December thirty-first, one thousand nine hundred and fifteen, and in every contract of hiring renewed or extended by mutual consent, expressed or implied, after said date, it shall be conclusively presumed that the parties have accepted the provisions of article three of this act [77 PS §411 et seq.], and have agreed to be bound thereby, unless there be, at the time of the making, renewal, or extension of such contract, an express statement in writing, from either party to the other, that the provisions of article three of this act are not intended to apply ......"

The Pennsylvania Workmen's Compensation Act clearly states its scope and extent of application. Defendant was a resident of and had his place of business in Pennsylvania; the contract of hiring, although made in Canada, was to be performed in Pennsylvania, and the provisions of our Workmen's Compensation Act are, in our judgment, applicable. As we view it, claimant's right to compensation is not affected by the fact that he was also to render services to defendant outside the

territorial and jurisdictional limits of this Common-wealth.

It was stipulated that the Workmen's Compensation Law of the Province of Ontario, Canada, is compulsory, but that claimant did not come within the purview of that act; and that he presented no claim thereunder. It follows that claimant's hiring in Canada is in exactly the same situation as if there had been no compensation act in that jurisdiction. Consequently, the extraterritorial effect of a compensation act is not involved; nor is it a matter of allowance of compensation either in the state of injury or in the state of hiring. See *Mavroulias v. Mugiana et al.,* 155 Pa. Superior Ct. 573, 577, 578, 39 A. 2d 263; *Hopkins v. Matchless Metal Polish Co. et al.,* 99 Conn. 457, 121 A. 828.

The rule as set forth in Restatement of Conflict of Laws §399, reads: "Except as stated in §401, a workman may recover in a state in which he sustains harm under the Workmen's Compensation Act of that state although the contract of employment was made in another state, unless the Act provides in specific words or is so interpreted as to apply only when the contract of employment is made within the state." The Restatement expresses the generally recognized view of the law; similar conclusions have been reached with some variations in the reasoning.

In *American Radiator Co. v. Rogge,* 86 N. J. L. 436, 7 N. C. C. A. 144, 92 A. 85, 94 A. 85 (1914) (certiorari refused 245 U. S. 630, 38 S. Ct. 63, 62 L. Ed. 520), the servant was employed in New York to work partly in New York and partly in New Jersey. He died in New Jersey as a result of injuries received while about the work he was employed to do in that state. The employer was held liable. The New Jersey Compensation Act covered "every contract of hiring." The Supreme Court of New Jersey held (92 A. 85, at page 86) that "the liability of the employer to make compensation is an obligation superimposed upon the original contract as

a condition of its performance in New Jersey, and it is contractual in character because either party may escape the obligation by giving notice that he will not be bound thereby."

In *Carl Hagenbeck & Great Wallace Show Co. v. Randall,* 75 Ind. App. 417, 126 N. E. 501 (1920), the claimant was hired in Ohio to work with a circus in all the states and Canada. The contract provided that the employment was to be governed by the laws of the District of Columbia. The employer was an Indiana corporation and did business in Indiana where claimant was injured. The Workmen's Compensation Act of Indiana specifically provided that every employer in the state was presumed to have accepted the provisions of the act, and to have agreed to be bound thereby, unless such employer, thirty days before the accident resulting in injury or death, shall have given notice of exemption. The employer gave no notice of exemption as required by the Indiana act. The appellate court of Indiana held that the Workmen's Compensation Act of Indiana applied, and that "appellant's obligation under the Indiana Act was superimposed upon the Ohio contract as a condition of its performance in this state. Appellant could not relieve itself of the statutory obligation by a foreign contract. The one way of exemption was by notice as provided by the act."

In *Johns-Manville, Inc., v. Thrane et al.,* 80 Ind. App. 432, 141 N. E. 229 (1923), the contract of employment was made in Illinois to be performed in Indiana. The appellate court of Indiana held (141 N. E. 229, 230) that the contract was in effect an Indiana contract and subject to the laws of Indiana, including the Workmen's Compensation Act; that an employee under such a contract, though his permanent residence was elsewhere, was an Indiana employee; and that "a contract made in one state, in contemplation of performance in another, is subject to the law of the state in which it is to be performed. 13 C. J. 249."

In *De Gray v. Miller Bros. Const. Co., Inc., et al.,* 106 Vt. 259, 173 A. 556, the parties having previously submitted to the jurisdiction of Connecticut, the proceedings were dismissed, but the Supreme Court of Vermont said, inter alia, that a person working under a contract of hiring made in a foreign state did not become an employee under the provisions of the Vermont act until he rendered services for his employer in that state under such contract; that as soon as he rendered services for his employer in that state under such contract the act entered and became a part of the contract; that he was then bound by the provisions of the act, and was entitled to compensation under its provisions for an injury sustained in that jurisdiction while rendering services under the contract. The Compensation Act of Vermont provided that its provisions should not apply to an employer and an employee unless prior to the injury they so elected by agreement express or implied; and that every contract of hiring was presumed to have been made subject to the provisions of the act unless there was notice by either party as provided by the act.

It is to be noted that the full faith and credit clause of the Federal Constitution does not deny the right to the courts of this state to apply our own Workmen's Compensation Act in the case of an injury suffered by an employee while in the state, although the contract of employment was entered into in another state; and this is true even if the Workmen's Compensation Act of the latter state provided for compensation for injury suffered out of that state. *Pacific Employers Ins. Co. v. Industrial Accident Commission,* 306 U.S. 493, 59 S. Ct. 629, 83 L. Ed. 940; *Magnolia Petroleum Co. v. Hunt,* 320 U.S. 430, 64 S. Ct. 208, 88 L. Ed. 149, 15 N.C.C.A. (N.S.) 529; *Lane v. Fitzgerald Const. Co. et al.,* 265 App. Div. 1026, 39 N.Y.S. 2d 61.

Appellants conceded that claimant had no right of action under the Workmen's Compensation Law of the

Province of Ontario, but nevertheless argue that the law of the place of contract is controlling in determining the contractual obligation between claimant and defendant. The ultimate result of appellants' theory would be to deprive claimant of any compensation for his accidental injury in Pennsylvania in the course of his employment with defendant. Recognizing that the rights of an employee under our Workmen's Compensation Act are contractual, we are of the opinion that the contract of hiring in the present case made in Canada by defendant, a Pennsylvania employer, in contemplation of performance in Pennsylvania is subject to the law of Pennsylvania, including the Workmen's Compensation Act. Aside from the declared public policy of this Commonwealth as to the relationship of employer and employee, we agree, as stated by Judge STORY, that " 'where the contract is either expressly or tacitly to be performed in any other place the general rule is in conformity to the presumed intention of the parties that the contract, as to its validity, nature, obligation and interpretation, is to be governed by the law of the place of performance.' Conflict of Laws, §280": *Waverly National Bank v. Hall et al.,* 150 Pa. 466, 472, 24 A. 665, 666. Defendant, in entering into a contract of hiring with claimant in Canada, could have prevented application of the provisions of article 3 of our Workmen's Compensation Act, if he had so desired, by giving a notice or his statement in writing to claimant that the provisions of article 3 of the act "are not intended to apply," and serving and filing the same in the manner provided by the act. Defendant having failed to give the prescribed notice and the parties having undertaken to perform the contract in Pennsylvania, they voluntarily subjected themselves to our law and are governed thereby. A Pennsylvania employer could not avoid the implication of our Workmen's Compensation Act by merely entering into a contract of hiring in another jurisdiction for employment in Pennsylvania;

and defendant has been deprived of no right to trial by jury except by his own consent conclusively presumed, under the circumstances, to have been given.

Judgment is affirmed.