## National Grange Mutual Liability Co. Petition

*J. Glenn Berry,* for plaintiff.

*Errol Fullerton,* for defendant.

BRAHAM, P. J., December 23, 1955.—This is a petition for declaratory judgment brought by the company which insured W. S. Fullerton in his lifetime against certain eventualities happening in the operation of his farm in North Beaver Township, Lawrence County. The petition alleges that one Samuel V. Badger has brought suit against the estate of W. S. Fullerton, now deceased, for injuries said to have been suffered by Badger while he was employed by Mr. Fullerton to do work on the farm. The suit was admittedly brought within the period fixed by the policy of insurance. The executrix of W. S. Fullerton answered the petition for declaratory judgment.

The question is whether the insurance company is liable for the injury under the policy. A hearing was held. From the evidence taken we make and record the following findings of fact, discussion, conclusions of law and decree nisi.

*Findings of Fact*

1. On June 1, 1951, W. S. Fullerton entered into a contract of insurance with National Grange Mutual Liability Insurance Company, whereby the Insurance Company insured him for eventualities referred to as "A. Liability" and "B. Medical Payments", the limit being $20,000 for liability and $250 for medical payments. A copy of the policy is attached to the petition and marked "exhibit A".

2. Under the terms of the policy "liability" is defined in this language:

"1. Coverage A. Liability.

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, and as damages because of injury to or destruction of property, including the loss of use thereof."

3. Under the terms of the policy medical payments are defined as follows:

"Coverage B. Medical Payments.

"To pay all reasonable expenses incurred within one year from the date of the accident for necessary medical, surgical, hospital, professional nursing and funeral services, to or for each person who sustains bodily injury, sickness or disease, caused by accident,

"(1) while on the premises with the permission of an insured, or

"2. while elsewhere if such injury, sickness or disease (a) arises out of the premises or a condition in the ways immediately adjoining, (b) is caused by the activities of an insured, (c) is caused by the activities of or is sustained by a farm or residence employee while engaged in the employment of an insured, or (d) is caused by an animal owned or in the care of an insured."

4. Certain other provisions of the policy governing "Exclusions" are applicable here:

"The policy does not apply:

"(d) under coverages A and B, to bodily injury to or sickness, disease or death of (1) any farm employee while engaged in the employment of the insured unless farm employees are specifically declared in this policy; or (2) any employee of the injured while engaged in the employment of the insured, if benefits therefor are either payable or required to be provided under any workmen's compensation law, or (3) any residence employee of the insured while engaged in the employment of the insured if the insured has in effect on the date of the occurrence a policy providing workmen's compensation benefits for such employee;

"(g) under coverage B, to bodily injury to or sickness, disease or death of (1) any person while engaged in his employment if benefits therefor are payable under any workmen's compensation law, or (2) any insured within the meaning of the parts (a) and (b) of Insuring Agreement III, or (3) any person, other than residence employees or farm employees when declared in this policy, if such person is regularly residing on the premises or is on the premises because of a business conducted thereon, or is injured by an accident arising out of such business, or is engaged in work incidental to the maintenance or use of the farm premises."

5. Certain definitions appear in the contract as follows:

"(c) Farm Employee. 'Farm employee' means an employee of an insured whose duties are incidental to the ownership, maintenance or use of the farm premises, including the maintenance or use of automobiles or teams".

"(d) Residence Employee. 'Residence employee' means an employee of an insured, other than a farm

employee, whose duties are incidental to the ownership, maintenance or use of the premises, other than farm premises, including the maintenance or use of automobiles or teams, or who performs elsewhere duties of a similar nature not in connection with an insured's business."

No farm laborers or residence employes were named in the contract.

6. At the time of the issuance of said policy, W. S. Fullerton owned and operated a farm in North Beaver Township, Lawrence County, containing approximately 220 acres, and the said policy covered only persons other than employes of the assured.

About two weeks before May 13, 1952, the date on which he was hurt, Samuel V. Badger entered into an oral contract with W. S. Fullerton to repair a silo on a farm which Mr. Fullerton had bought, by replastering such of it as needed replastering. No terms were specifically agreed upon, but it was understood that Mr. Fullerton was to furnish the materials and the men to mix the concrete while Mr. Badger was to furnish the tools and the men to apply it.

7. On or about May 13, 1952, pursuant to his engagement with Mr. Fullerton, Mr. Badger went with two other men furnished by him to the Fullerton farm and began the work of plastering the silo. One of the men with Mr. Balger was his brother with whom he was commonly associated in such enterprises.

8. While he was engaged with his fellows in the work Samuel V. Badger was injured.

9. The assured, W. S. Fullerton, died testate on November 25, 1953, and letters testamentary were issued on his estate to Alice Fullerton, who is currently acting as executrix thereof.

10. Suit was brought by Samuel V. Badger against the executrix of W. S. Fullerton's estate to recover damages for personal injuries, which suit is still pending.

11. A dispute arose as to whether the insurance company was liable for the injuries. The said Alice Fullerton, as executrix of the estate of the said W. S. Fullerton, executed a nonwaiver agreement giving petitioner the right to defend the said action brought above referred to, without in any way affecting petitioner's right to deny liability under said policy. Attached to the petition and made part thereof and marked exhibit B is a true and correct copy of the said nonwaiver agreement.

12. Fullerton did not reserve the right to control the manner of the work, nor the persons whom Badger should hire to help him and Fullerton paid Badger's brother and partner for all the work including the compensation due Badger.

13. Badger was an independent contractor working for Fullerton.

### Discussion

The parties have united in agreeing that the procedure afforded by the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, as amended by the Act of May 26, 1943, P. L. 645, 12 PS §836, is a lawful, and the most advantageous way to decide this controversy. To be sure the Fullerton estate might bring the insurance company into the action as an additional defendant liable over to the Fullerton estate; but this is a circuitous proceeding and the question would still remain one to be decided by the court under the terms of the insurance policy, the terms of which govern the parties. A declaratory judgment is proper under these circumstances: Philadelphia Manufacturer's Mutual Fire Insurance Company v. Rose, 364 Pa. 15; Philadelphia Manufacturer's Mutual Fire Ins. Co. v. Rose, 368 Pa. 363; Burke v. Pittsburgh Limestone Corp., 375 Pa. 390.

In construing this policy it is important to keep in mind the principle that insurance policies must be

construed in the light most favorable to the insured: Phila. Manufacturer's Ins. Co. v. Rose, supra.

The insurance company has agreed to be responsible in two general categories, one called "Liability" and the other "Medical Payments". The language upon which the insurance company seems to rely is found in "Exclusions", paragraph (g)(3). This exempts the company from liability to anyone other than residence employes or farm employes if the person injured "is engaged in work incidental to the maintenance or use of the farm premises".

Mr. Badger does not claim to be either farm employe or residence employe. The language of section (g) is sufficient to exclude his claim for benefits under "B Medical Payments".

His claim under "A Liability" stands on a different footing. As to this category the policy in the most general terms agrees to be liable for any amount recovered against the insured "as damages because of bodily injury", etc. As to this the only limitation is found under "Exclusions", paragraph (d).

There are three parts to (d). The policy does not apply to injury of "(1) any farm employee while engaged in the employment of the insured" unless he is declared in the policy or "(2) to any employee while engaged in the employment of the insured" who is or should be covered under any workmen's compensation law or "(3) any residence employee while engaged in the employment of the insured" upon whom the insured carries a policy of workmen's compensation insurance.

One difference between coverage under "A Liability" and under "B Medical Payments" is at once apparent. Each of the three groups excluded under exclusion (d) is excluded only while engaged in the employment of the insured. The third of the three groups excluded from "Medical Payments by exclusion g(3) is excluded

if "engaged in work incidental to the maintenance or use of the farm premises".

Exclusion from "Medical Payments" is more drastic than from "Liability". The company which drew the policy is presumed to have intended a different meaning.

Nothing in sections 2 or 3 of exclusion (d) operates to exclude Mr. Badger because he is not shown to have been covered by workmen's compensation insurance. He is excluded, if at all, under exclusion (d) (1). But the policy does not exclude him generally if he was hurt while doing any work incidental to the maintenance or use of the farm premises, as is the case as to "Medical Payments", but only under g(1), if he is a "farm employee hurt while engaged in the employment of the insured".

This leads at once to the problem whether Mr. Badger was a servant or employe of Mr. Fullerton or an independent contractor. The Restatement of the Law of Agency §220 states the nine factors important to a determination of the question. Practically all of these tests will classify Badger as an independent contractor. Fullerton did not pretend to control Badger's doing of the work after telling him what to do. Badger was a mason and plasterer; he followed a separate trade. Plasterers and masons usually work as specialists without supervision. Distinct skill is required. Badger furnished all his own tools, with the possible exception of a mortar box. The work was not a part of the regular business of Fullerton who was a farmer.

Finally the parties believed they were creating the relationship of employer and independent contractor because Fullerton hired Badger, yet Badger felt free to bring along his brother, who was apparently his partner, and another mason or plasterer. Furthermore, when Badger was hurt early in the work, the others went right on and finished the work and when

payment was made it was made to Badger's brother because it was the brother who paid Badger his share.

The conclusion that Badger was an independent contractor is supported by the precedents on independent contractors: Johnson v. Angretti, 364 Pa. 602; Hanst v. Swartzfager, 170 Pa. Superior Ct. 219; Brooks v. Buckley & Banks, 291 Pa. 1; Gearhart v. Summit Fast Freight, Inc., 167 Pa. Superior Ct. 481.

I conclude, therefore, that this policy was intended to exclude all who are or are required to be covered by workmen's compensation insurance and all types of labor on the farm unless the laborers are listed on the policy, but that it does not exclude those who come upon the premises as independent contractors even though they may work on the farm buildings.

### Conclusion of Law

1. Samuel V. Badger was an independent contractor working for W. S. Fullerton but was not his "farm employee" who was hurt "while engaged in the employment" of Fullerton.

### Decree Nisi

Now this December 23, 1955, it is declared, ordered and decreed that under the policy of insurance upon which this proceeding is based National Grange Mutual Insurance Company is liable to indemnify the estate of W. S. Fullerton for any judgment within the limits of "A. Liability" recovered by Badger in his action against Fullerton which is now pending to recover for damages suffered by Badger when he was hurt while at work on Fullerton's farm on or about May 13, 1952. It is declared and decreed that the said insurance company is not liable to Fullerton under the category of "B. Medical Payments". The costs are placed upon the insurance company.

This decree shall become absolute unless exceptions are filed within 20 days.